1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

ALEXANDER OCASIO,                     )          3:08-CV-547-BES (RAM)
                                      )
           Plaintiff,                 )          **ORDER**
     vs.                              )
                                      )
DAVID ROGER, et al.,                  )
                                      )
           Defendants.                )
_____)

Before the court is Plaintiff's Motion for Relief from Judgment (Doc. #25), Motion to Enforce a Judgment for a Specific Act (Doc. #27), and Motion to Join Motion for Relief from Judgment or Order with Motion to Enforce a Judgment for a Specific Act (Doc. #28).  At the motion hearing, it was clarified that Plaintiff seeks to enforce the March 20, 2009, settlement agreement ("the Agreement") due to a dispute with Defendant regarding its proper interpretation (Doc. #24).  By the Agreement's express terms, the court has retained continuing jurisdiction over its construction and enforcement.[1]

The court has heard oral argument concerning the interpretation of the Agreement and the parties have submitted briefs outlining their respective positions (Doc. #41 and 44.)  After thoroughly considering the matter, the court finds that the settlement agreement has been correctly interpreted by Defendant.  Plaintiffs' motions to enforce the settlement and calculate the sentence credits in the manner described therein are denied.

_____

[1] Section E of the Agreement reads: "The NDOC and Ocasio hereby agree that the U.S. District Court of Nevada shall be the exclusive domain, at all times after the dismissal of the Litigation, in which the parties may seek relief concerning this Agreement, whether to enforce, interpret, clarify, or settle disputes concerning the Agreement."  (Doc. #25 at 10 [Settlement Agreement and Full and Final Release].)

1

# I. BACKGROUND

The lawsuit underlying the Agreement is a civil rights complaint brought pursuant to 42 U.S.C. § 1983 (Doc. #4). Following early mediation, the parties entered into the Agreement dismissing the claims against Defendant McDaniel. The relevant clause from the Agreement provides that

> Don Helling, Deputy Director of the NDOC agrees to compile and analyze a report regarding Ocasio's sentence credits regarding the time served on his sentence of incarceration ("Report"). Deputy Director Helling agrees to review Ocasio's sentence credits in the Report with respect to the changes made by A.B. 510, now codified in NRS Chapter 209. Deputy Director Helling agrees that the NDOC will adjust Ocasio's sentence credits, to the extent the analysis of the Report reflects that an adjustment of Ocasio's sentence credits is required. Deputy Director Helling agrees to provide Ocasio with a letter explaining the results of the analysis of the Report, and copy of the Report.

(Doc. #25 at 8 [Section II.A.1 of the Agreement].) In 2007, the Nevada Legislature enacted Assembly Bill ("A.B. 510" or "the bill"). This legislation amended Nevada Revised Statutes (NRS) Chapter 209 to double the amount of credits that certain inmates can earn toward early release.

The parties dispute whether a provision of the bill was retroactive. According to Plaintiff, the amendments were retroactive so that all the credits he has earned since his sentencing in 2004 must be revised. Under this interpretation, he would have earned sufficient good time credits to be immediately released from prison. According to Defendant's interpretation, the amendment took effect on July 1st, 2007, at which point Plaintiff began earning credits at the doubled rate.

# II. DISCUSSION

In interpreting state law, the court applies the statutory construction rules followed by Nevada courts. *See In re DNA Ex Post Facto Issue*, 561 F.3d 294, 300 (4th Cir. 2009). The threshold inquiry is whether the statutory language is clear and unambiguous. *Stockmeier v. Psychological Review Panel*, 122 Nev. 534, 135 P.3d 807, 809 (Nev. 2006). "If the language is clear and unambiguous, we do not look beyond its plain meaning, and we give effect to its apparent intent from the words used, unless that meaning was clearly not intended." *Id.*

The current provision for the calculation of good time credits is found in Nevada Revised Statutes (NRS) 209.4465:

> 1. An offender who is sentenced to prison for a crime committed on or after July 17, 1997, who has no serious infraction of the regulations of the Department, the terms and conditions of his residential confinement or the laws of the State recorded against him, and who performs in a faithful, orderly and peaceable manner the duties assigned to him, must be allowed:
>
> (a) For the period he is actually incarcerated pursuant to his sentence;
>
> (b) For the period he is in residential confinement; and
>
> (c) For the period he is in the custody of the Division of Parole and Probation of the Department of Public Safety pursuant to NRS 209.4886 or 209.4888,
>
> a deduction of 20 days from his sentence for each month he serves.
>
> . . .
>
> 7. Except as otherwise provided in subsection 8, credits earned pursuant to this section:
>
> (a) Must be deducted from the maximum term imposed by the sentence; and
>
> (b) Apply to eligibility for parole unless the offender was sentenced pursuant to a statute which specifies a minimum sentence that must be served before a person becomes eligible for parole.
>
> 8. Credits earned pursuant to this section by an offender who has not been convicted of:
>
> (a) Any crime that is punishable as a felony involving the use or threatened use of force or violence against the victim;
>
> (b) A sexual offense that is punishable as a felony;
>
> (c) A violation of NRS 484.379, 484.3795, 484.37955 or 484.379778 that is punishable as a felony; or
>
> (d) A category A or B felony,
>
> apply to eligibility for parole and must be deducted from the minimum term imposed by the sentence until the offender becomes eligible for parole and must be deducted from the maximum term imposed by the sentence.

Nev. Rev. St. 209.4465. The 2007 amendments to this provision doubled the amount of statutory good time credits earned by an inmate from ten days to twenty days per month for good behavior. *See* 2007 Nev. Stat., ch. 525, § 5, at 3176 [A.B. 510, 2007 Leg., 74th Sess. (Nev.

3

2007)]. Therefore, under subsection 7, for an offender convicted a Category B felony (as in this case[2]), good time credits are deducted from the maximum sentence and apply to parole eligibility, unless the offender was sentenced under a statute specifying a minimum term of imprisonment.

What is not immediately apparent, however, is *when* an offender begins to earn good time credits at the new rate of twenty days per month. "The general rule is that statutes are prospective only, unless it clearly, strongly, and imperatively appears from the act itself that the Legislature intended the statute to be retrospective in its operation." *In re Estate of Thomas*, 116 Nev. 492, 495, 998 P.2d 560, 562 (Nev. 2000). NRS 209.4465 is silent on its retroactivity. However, in amending the statute, the Legislature designated a group of offenders for which the amendments were to have a retroactive effect:

> Sec. 21. 1. For the purpose of calculating the credits earned by an offender pursuant to NRS 209.4465, the amendatory provisions of section 5 of this act must be applied:
>
> (a) Retroactively to July 1, 2000, to reduce the minimum term of imprisonment of an offender described in subsection 8 of NRS 209.4465 who was placed in the custody of the Department of Corrections before July 1, 2007, and who remains in such custody on July 1, 2007.
>
> (b) Retroactively to July 1, 2006, to reduce the maximum term of imprisonment of an offender who was placed on parole before July 1, 2007.
>
> (c) In the manner set forth in NRS 209.4465 for all offenders in the custody of the Department of Corrections commencing on July 1, 2007, and for all offenders who are on parole commencing on July 1, 2007.

2007 Nev. Stat., ch. 525, § 21, at 3196 [A.B. 510, 2007 Leg., 74th Sess. (Nev. 2007)]. Subsections a and b of the provision expressly indicate that they are to apply "retroactively" to a specified date for certain categories of offenders. Presumably, the Legislature determined that these offenders were suitable for additional good time credits due to the nature of the offenses they committed or because they had met parole qualifications. The parties agree that neither subsection is applicable here. Subsection c is a catch-all provision for those offenders

---

[2] See Doc. #44, Ex. B [Judgment of Conviction].

4

not falling into either of these categories. Rather than containing a retroactivity provision, it indicates that the amended good time credit scheme is applicable "commencing on" July 1st, 2007. Therefore, before July 1st, 2007, an offender convicted of a category B felony earned 10 days of good time credit per month served; after this date, he began earning good time credits at the new rate of 20 days per month.

Plaintiff argues that the "commencing on" language in subsection c instead refers to the date when the changes became effective. *See, e.g.*, Doc. #41 at 11 ("The term 'commencing' means that the law is to be applied on July 01, 2007. . . .") He reads the language of NRS 209.4465(1) to mean that any offender incarcerated on or after July 17th, 1997 earns 20 days of good time credits for any month served within the Department of Corrections from that date. The court finds that while the term "commencing on" can be confusing when viewed in isolation, its meaning becomes apparent when considering this phrase in the context of the accompanying provisions and the legislative history. *See Banks ex rel. Banks v. Sunrise Hosp.*, 120 Nev. 822, 846, 102 P.3d 52, 68 (Nev. 2004) ("[W]e look to the statute's terms and context, along with reason and public policy to ascertain the legislature's intent."). Plaintiff's interpretation of §21(c) of A.B. 510 and NRS 209.4465 suffers from several defects.

First, nothing in subsection c provides for a general retroactive effect to the statutory amendments for a Category B felony offender. The Legislature designated two instances where there would be retroactivity to the amendments, neither which is applicable here. Omitting such language from subsection c suggests that the Legislature never intended a retroactive effect. *See generally Ariz. Elec. Power Co-op v. United States*, 816 F.2d 1366, 1375 (9th Cir. 1987) ("When Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded."). Moreover, Plaintiff's interpretation would require the court to ignore the rule that a retroactive provision must be explicitly worded to have that effect. *In re Estate of Thomas*, 116 Nev. at 495, 998 P.2d at 562.

/ / /

Second, Nevada courts follow the standard principle of construction that no part of a statute should be rendered mere surplusage if that result is avoidable. *In re Estate of Thomas*, 116 Nev. at 495, 998 P.2d at 562. The statutory amendments to NRS 209.4465 already contain an explicit effective date provision. *See* 2007 Nev. Stat., ch. 525, § 22, at 3196 ("This section and sections 1 to 19, inclusive, and 21 of this act become effective on July 1, 2007."). There would be no need for subsection c if its only purpose was to establish an effective date for the changes. Rather, subsection c clarifies that unlike the two preceding subsections, the changes to NRS 209.4465 are to be prospective only, "commencing on" July 1st, 2007. Read in context, this is consistent with the rest of § 21 of the bill, which establishes other starting dates for applying the revised good time credit scheme for certain subsets of the offender population.

Finally, Plaintiff's interpretation would lead to absurd results. For example, subsection b provides that current parolees receive good time credits under the terms of the amended statute beginning on July 1st, 2006. This rewards these offenders for the good behavior (that qualified them for parole) by granting them an additional one-year period to earn credits at the higher rate of 20 days per month. Other offenders begin earning credits at this rate starting the next year. According to Plaintiff, however, an inmate denied parole would be able to earn good time credits at the higher rate from the very beginning of his incarceration. It seems unlikely that the Legislature would grant a greater number of good time credits toward early release to an offender who failed to receive Parole Board approval versus one already paroled.

Another problematic result of Plaintiff's interpretation is that an offender would theoretically only have to serve 60% percent of his maximum sentence before accumulating enough credits to be released.[3] However, the legislative history indicates that the framers of the bill sought to avoid the sudden release of large numbers of inmates by designing A.B. 510 to generally have a prospective effect. *Meeting of the Assem. Comm. on Ways and Means*, 74th Nev. Leg. Sess. 6 (2007) (statement of James W. Hadesty, J., Nev. Supreme Court), *minutes*

---

[3] This assumes that the inmate was committed after July 17th, 1997 and had no disciplinary problems. For example, an inmate sentenced to a 120-month (ten years) maximum sentence would only need to serve 72 months' (six years) worth of good time. At that point, he would have earned 20 days x 72 months of early release credits, which is equivalent to 1,440 days (four years).

*available at* http://www.leg.state.nv.us/lcb/research/library/2007/AB510,2007.pdf. Under subsection a of A.B. 510 § 21, the retroactive accumulation of good time credits for current inmates is limited to a certain subset of offenders, and then only toward the *minimum* sentence of those inmates.   *Id.*   As a result, the retroactive portion of the bill only affects parole eligibility, as the drafters contemplated that offenders would still be reviewed by the Parole Board in a staged fashion rather than immediately released en masse.  *Id.* at 5 (statement of Assemblyman John Carpenter, Guest Legislator).  Adopting Plaintiff's interpretation would immediately and significantly increase the number of good time credits applicable toward early release, since under subsection c and NRS 209.4465(7)(a) these credits would apply toward Plaintiff's *maximum* sentence.   As a result, large numbers of inmates would need to immediately be released from NDOC custody.  While one of the goals of A.B. 510 was to address prison overcrowding, the court finds no support for the proposition that the Legislature intended this extreme result. *See id.*

Plaintiff suggests an alternate phrasing for the statute had the Legislature in fact intended § 21(1)(c) of A.B. 510 to have a prospective effect and that mirrors language used elsewhere in the statute.  (Doc. #47 at 4.)  The court concludes that the meaning of the provision is readily apparent from its context and legislative history.   Under such circumstances, it would be entirely inappropriate for the court to second-guess the Legislature or to engage in statutory redrafting. *See Wilson v. N.L.R.B.*, 920 F.2d 1282, 1289 (6th Cir. 1990) (citing *United States v. Locke*, 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985)).

Plaintiff is eligible for a deduction of 10 days of statutory good time credits from the beginning of his incarceration in 2004 until June 30th, 2007 for each month served. Commencing on July 1st, 2007, Plaintiff is eligible for a deduction of twenty days of good time credits for each month served to the present.  The motions to otherwise calculate Plaintiff's good time credits as described in his moving papers are denied.

/ / /

7

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Relief from Judgment (Doc. #25), Motion to Enforce a Judgment for a Specific Act (Doc. #27), and Motion to Join Motion for Relief from Judgment or Order with Motion to Enforce a Judgment for a Specific Act (Doc. #28) are **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Strike Plaintiff's Response to Defendant's Brief (Doc. #48) and the Motion to Supplement Plaintiff's Brief (Doc. #50) are **DENIED** as moot.

DATED: July 17, 2009.

_____
UNITED STATES MAGISTRATE JUDGE